Louisville & Nashville Railroad Co. v. Simon B. Buckner.

---

CASE 49—PETITION EQUITY—OCTOBER 11.

# Louisville & Nashville Railroad Co. v. Simon B. Buckner.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. USE OF ENEMY'S PROPERTY.—A Confederate officer may maintain an action, for the value of the use of his real estate, against a party who acquired and held possession thereof during and after the war through the form of a purchase under an illegal judgment.

2. *War does not destroy* but only suspends the relative rights of antagonist enemies.

3. *When the war ceases* the one is remitted to his remedies against the other as if no suspension had occurred, and may maintain his action for the recovery of property or wrongs committed thereon, or for the use and occupation thereof. (Hord and wife v. Alexander, Ms.

Louisville & Nashville Railroad Co. v. Simon B. Buckner.

decision, April, 1867; Crutcher v. Hord and wife, 4 Bush, 360; Bradwell v. Weeks, 1 Johnson's Chancery, 206.)

4. A citizen or corporation in one country or section of country at war with another is responsible for an unauthorized appropriation of an enemy's private property, whether the possession be acquired by a mere trespass or, as in this case, through the form of a purchase under an illegal judgment.

.5. MEASURE OF THE RECOVERY FOR THE USE OF PROPERTY.—The plaintiff's right to recover is not limited to the rents which the defendant may have received, but he is entitled to recover what the use of the property was reasonably worth.

JAMES SPEED, . . . . . . . . . . . For Appellant,

CITED

Wheaton's Int. Law, by Dana, secs. 545, 546, and note 169.
Coke upon Lyttleton, section 412.
2 Dallas, 102, Hoar v. Allen and tenants.
2 Dallas, 132, Foxcraft & Galloway v. Nagle.
1 Peters's C. C. R. 524, Conn v. Penn.
3 Wash. C. C. R. 403, Denniston, &c. v. Imbell.
4 Wheaton, 246, United States v. Rice.
9 Howard, 663, Fleming v. Page.
3 Phillimore's International Law, page 734.
16 Howard, 164, Cross v. Harrison.

R. W. WOOLLEY, . . . . . . . . . For Appellee,

CITED

Wheaton, Lawrence's, 520, 522, part 4, chapter 1.
Vattel, book 3, chapters 12, 18.
Broom's Legal Maxims, 140.
Civil Code, section 364.
Croke's Elizabeth, 684, Brock v. Phillips.
Lord Raymond, 282, Wills v. Wilkins.
Douglas Reports, 592.
*Princip de Derecho Internacional,* chapter 10, page 267.
Law Register, 1862, page 498, Amy Warwick.
2 Wildman on International Law, page 9.
3 Phillimore, 733.                    2 Black, 686.
4 Bush, 363, Crutcher v. Hord.
2 Duvall, 426, Jackson v. Speed.
1 Bush, 404, Bell v. Louisville & Nashville R. R. Co.
1 Bush, 387, Price v. Poynter.
2 Duvall, 502, Christian County v. Tharp.

1 Metcalfe, 450, Terrill v. Jennings.
3 Metcalfe, 37, Russell v. Marks.
2 Metcalfe, 558, Letton v. Young.
4 Metcalfe, —, Norris v. Doniphan.
2 Bush, 299, Leathers v. Commercial Insurance Co.
1 Riquelme, 172.                    17 B. Monroe, 470.
1 Johnson, 208, Broadwell v. Weeks.
7 Bush, 179, New York Life Ins. Co. v. Clopton, &c.
1 Vertrees, 417.                    1 Kent, 93.
2 Duvall, 353, *Ex parte* Tenny.
12 B. Monroe, 28, March v. Commonwealth.
14 L. J. Chan. 246, St. Victor v. Devereux.
41 Elizabeth Roll, 1704, Easter Term.
19 Johnson, 141, Buchanan v. Curry.
10 Johnson, 183, Clark, Mory & Bell v. Chapman.
10 Mod. Rep. 79, East India Co. v. Sands.

JUDGE HARDIN DELIVERED THE OPINION OF THE COURT.

During the late civil war the appellee, a citizen of Ken-
tucky, and the owner of valuable property therein, became
engaged as a general officer in the military service of the
Confederate States, and in that capacity was with their army,
commanded by General A. S. Johnston, at Bowling Green, Ky.,
in October, 1861. It appears that about that time, for military
purposes offensive or defensive, a bridge on the line of the
Louisville & Nashville Railroad over Green River was, with
other property of the appellant, wholly or partially destroyed
by the Confederate army; and on the 26th day of December,
1861, the appellant brought this suit in the Louisville Chan-
cery Court for the recovery of sixty-two thousand three
hundred and sixty-two dollars against the appellee as damages
for the destruction of said property, and under a statute then
recently enacted sued out an order of attachment which was
levied on the real and personal property of the defendant as
security for the claim.

The cause progressed to a final hearing, and after an as-
sessment of damages by a jury the court rendered a judgment
*in rem* in favor of the plaintiff for $55,361.76, and directed

a sale of all the attached property for its payment, providing in the judgment that certain comparatively small debts of the defendant, which were supposed to have priority of lien on the property, should be first satisfied out of its proceeds.

Under that judgment the appellee's property was sold on the 12th day of January, 1863, for prices which are shown to have been greatly inadequate; the appellant becoming the purchaser of a house and lot in the city of Louisville for eleven thousand dollars, and a large tract of land in Hart County for one thousand dollars; out of which $3,411.05 were paid in satisfaction of the claims and costs of preferred attaching creditors, and the residue was withheld as a credit on the judgment for $55,361.76; and the appellant acquired the possession of the property under its purchase, and by its tenants occupied that in Louisville from January, 1863, to January, 1868, and the land in Hart County from June, 1865, to April, 1868; at which times the possession was restored to the appellee under an agreed judgment rendered in December, 1867, vacating the sales, he having in the mean time entered his appearance and filed an appropriate pleading seeking that relief.

By the last-mentioned judgment the cause was referred to the commissioner of the court to state and report the accounts of the parties, which, as expressed in the order, should "contain and show the debits and credits of each party growing out of payments, money advanced, improvements of the property, and out of the attachment, and out of the sales, and out of all other matters connected with and in these suits."

The commissioner made his report, charging the appellee with the amount of debts paid as preferred claims, as already stated, and $2,339.86 paid to remove a lien on part of the property, and other payments claimed to have been made by the appellant, and crediting him with the proceeds of the

sales of his personal property and rents of the real estate, and damage done thereto, estimated according to what seems to have been the weight of the evidence, and showing a balance to the appellee of $5,890.67; for which the court rendered the judgment from which this appeal is prosecuted.

By exceptions which were taken in the court below, as well as the argument for the appellant in this court, it appears that the principal points on which it resisted the allowance of the claims for rents and damage, and now seeks a reversal of the judgment, are in substance:

1. That the appellee having been during much of the time the property was occupied by the appellant, and when the alleged damage was committed, engaged in the war against the Government of the United States, to which this state adhered, there could be no lawful contract on the part of the appellant to pay for the use of his property or damage thereto, nor would the law imply an obligation to do so.

2. That if any liability existed for rents, the amount actually received by the appellant was the correct criterion, and not the value of the use of the property, as assumed by the commissioner.

It would certainly manifest a singular want of reciprocity of obligation between the parties, as they respectively stood toward each other as belligerent enemies, to admit the principle stated in the first proposition, with such an application as to exclude the appellee's claim, which arose before the close of the war, and still leave him chargeable with the amount of his debts, which the appellant, unsolicited by him, and perhaps without his knowledge, paid to his creditors, while all business intercourse between them was interdicted by the laws of war. And yet if that principle be conceded as equally applicable to both parties, and made to exclude the claims of both which arose while the appellee was in the position of a public enemy, his claim for the rent of his

property alone accruing afterward would, according to the evidence, exceed the amount of the judgment which was rendered in his favor.

But it can not be admitted that in such a civil war as the recent conflict in this country was, which for years divided the republic itself into two organized communities of states, both the contending parties were not entitled to all the rights of war as against each other. (Lawrence's Wheaton on International Law, 520.)

But there is no maintainable ground, as we concieve, for the proposition that a citizen or corporation in one country or section of country at war with another can avoid responsibility for the unauthorized appropriation of an enemy's private property, whether the possession be acquired by a mere trespass or, as in this case, through the form of a purchase under an illegal judgment of a court.

Although, as a general rule, the existence of a state of war suspends alike commercial intercourse and civil rights and remedies as between antagonist enemies, it does not destroy but only suspends their relative rights; and when the war ceases the one is remitted to his remedies against the other as if no suspension had occurred, and may maintain his action for the recovery of property or wrongs committed thereon, or for the use and occupation thereof. (Hord and wife v. Alexander, Ms. decision, April, 1867; Crutcher v. Hord and wife, 4 Bush, 360; Bradwell v. Weeks, 1 Johnson's Chancery Reports, 206.)

We concur in the conclusion of the court below also that the right of the appellee to recover for the use of the property was not limited by the annual rents which the appellant may have received, but that he was entitled to recover what the use of the property was reasonably worth.

Wherefore the judgment is affirmed.